IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| MARIA MARTINEZ,<br><br>        Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL**<br><br>Case No. 2:06cv00928-DAK<br><br>Judge Dale A. Kimball |
|---|---|

Plaintiff, Ms. Maria Martinez, appeals the denial of her claim for Supplemental Security Income by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 1383(c). For the reasons outlined below, the Commissioner's decision is REVERSED and REMANDED.

## I. STANDARD OF REVIEW

The Commissioner's decision is reviewed to determine whether the factual findings are supported by substantial evidence and whether the relevant legal standards were correctly applied. Daniels v. Apfel, 154 F.3d 1129 (10th Cir. 1998), citing Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a mere scintilla but less than preponderance. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971).

## II. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining disability. The five steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals the criteria for an impairment listed in Appendix 1 of 20 C.F.R. Subpt. P; (4) whether the impairment prevents the claimant from performing his past relevant work; and (5) whether the impairment prevents the claimant from performing other work. The burden is on the Plaintiff to meet the first four steps. However, if Plaintiff does meet all four, the burden shifts to the Commissioner to establish that there are other jobs existing in a significant number in the national economy which Plaintiff is capable of performing.

In the present case, the Commissioner, through the written decision of the ALJ, held Ms. Martinez has not engaged in substantial gainful activity since the date she alleged she became disabled (February 18, 1997) and that she suffers from severe impairments. (Tr. 17-19). The ALJ found that Ms. Martinez's conditions do not meet a Listings impairment. (Tr. 19). At step four the ALJ concludes Ms. Martinez is unable to perform any of her past relevant work. (Tr. 29). Therefore, in this case, Ms. Martinez has satisfied her burdens in establishing disability and the burden has shifted to the Commissioner to show Ms. Martinez can perform other work available in significant numbers. At step five, the ALJ finds Ms. Martinez can perform work as a surveillance systems monitor and telephone quote clerk, and therefore, relying on a component of the VE's testimony, concludes she can perform jobs available in significant numbers, and thereby denies her claim. (Tr. 29).

Ms. Martinez specifically argues that three major errors where made by the Commissioner in considering Ms. Martinez's claim.  As set forth below, I agree with Ms. Martinez on two of the arguments raised and that such errors warrant a reversal of the Commissioner's denial and remand for further proceedings.

> **A.   The ALJ's reasons for finding Ms. Martinez not credible are not legitimate reasons for finding a claimant's complaints of limitations not disabling.**

The ALJ ruled that Ms. Martinez's testimony was not fully credible, and as justification for this finding, the ALJ states that "the evidence goes against her time and time again, showing her non-compliance, whether it was deliberate or due to a lack of insurance." (Tr. 25).  It is contrary to Social Security regulations and federal case law to hold against a claimant the failure to get treatment when it cannot be afforded.  Thus, failure to receive treatment when it cannot be afforded is an improper ground on which to base a credibility finding.  This is a reversible legal error.

While credibility determinations are peculiarly the province of the finder of fact or the ALJ, such findings "should be closely and affirmatively linked to substantial evidence . . ." Houston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); see also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Social Security Ruling 96-7p gives guidelines for assessing the claimant's credibility, stating: "[An] individual's statements may be less credible ... if the medical reports or records show that the individual is not following the treatment as prescribed and there is no good reason for this failure."  SSR 96-7p (on the web at www.ssa.gov/OPHome/rulings).

3

Courts have consistently held that the claimant's proven inability to afford the prescribed treatment is a "good reason" for not following the treatment. As stated by the Eleventh Circuit, "poverty excuses noncompliance." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). In addition, "several [courts] have considered whether disabled claimants may be denied benefits if their condition is remediable but they cannot afford the necessary medical treatment. All have concluded that the Commissioner may not deny benefits in those circumstances." Gamble v. Chater, 68 F.3d 319, 320-321 (9th Cir. 1995); see also Dawkins, 848 F.2d at 1213 (while remediable conditions are not generally disabling, that condition is disabling if claimant cannot afford prescribed treatment); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) ("the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered."); Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."); Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984) (Secretary should consider lack of resources in determining whether condition is remediable); see also Social Security Ruling 82-59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford) (on the web at www.ssa.gov/OPHome/rulings).

The ALJ had ample evidence at the hearing to determine that Ms. Martinez did not properly medicate some of her disorders and seek further mental health treatment because she was unable to afford the medications and treatments. With respect to Ms. Martinez's treatment of her diabetes, Ms. Martinez's lawyer stated at the hearing that Ms. Martinez currently took

insulin for her diabetes but "hasn't always had the money to buy it." (Tr. 54). Ms. Martinez's lawyer also explained to the ALJ at the hearting that Ms. Martinez's stopped seeking mental treatment at Valley Mental Health because she was told that she needed to pay. (Tr. 52). In addition, medical expert Dr. Morrison testified at the hearing that Ms. Martinez had very high blood glucose levels but sometimes bought "analgesics over hypoglycemics primarily because of the cost." (Tr. 57).

Furthermore, evidence presented to the ALJ explains that Ms. Martinez's non-compliance stemmed from her inability to afford medical treatment. (Tr. 275, 297, 309, 330, 456, 458-59, 574, 583-84). In fact, the ALJ *repeatedly cites* this evidence in his decision. For example, when first discussing the medical exhibits, the ALJ states Ms. Martinez has poor control of her diabetes caused by poor compliance due to "her lack of money to purchase testing strips and medication." (Tr. 20). Later, the ALJ discussed how Ms. Martinez's insurance covered only four medications a month, which forced Ms. Martinez to not fill all of the medications prescribed to her. (Tr. 23). This included her diabetes medication. (Tr. 23).

In spite of the abundant amount of evidence and testimony explaining Ms. Martinez's non-compliance due to lack of income and insurance, the ALJ finds Ms. Martinez not-credible because her lack of compliance. The ALJ states that it is difficult to find Ms. Martinez's claims regarding the disability caused by her diabetes credible when "the evidence goes against her time and time again, showing her non-compliance, whether it was deliberate or due to a lack of insurance." (Tr. 25). In other words, the ALJ understands that the evidence demonstrates that Ms. Martinez lacks the income and insurance to comply with all of her medical treatments, but

still finds Ms. Martinez not credible because she did not undergo proper medical treatment. Holding Ms. Martinez not credible because her "lack of insurance" forced her to not comply with all prescribed medical treatments negates the intentions behind Social Security policy.

Even though the ALJ acknowledges that Ms. Martinez does not comply with medical treatments due to lack of insurance and income (Tr. 20, 25), the ALJ does not take this into account when making the credibility determination. Under Social Security Ruling 96-7p, supra, the ALJ may not find Ms. Martinez less credible because she has not followed prescribed treatment she cannot afford.

The ALJ based his credibility determination on an improper base. The ALJ found that Ms. Martinez was not credible because her impairments were remediable, but the ALJ failed to take into account the fact that Ms. Martinez could not afford the remedies. On remand, the ALJ shall properly consider Ms. Martinez's credibility, applying the rules discussed above concerning non-compliance with prescribed treatment due to inability to afford.

**B.    The ALJ commits legal error by not properly defining the term "moderate" In determining Ms. Martinez's residual functional capacity (RFC)**

In the hearing of Ms. Martinez's claim, the ALJ heard several definitions of the term "moderate" impairment. Under certain definitions of "moderate impairment," a person with such impairments can be unable to work any job. An understanding of "moderate impairment" is vital to the understanding of Ms. Martinez's claim because Ms. Martinez's NAL Capacity Assessment states that Ms. Martinez is "moderately" limited in five areas (Tr. 362-63), and Ms. Martinez's Mental Residual Functional Capacity Assessment found Ms. Martinez "moderately" limited in

eight areas. (Tr. 537-38). When the ALJ did not define "moderate" at the hearing, he committed legal error and thus his ruling was not based on substantial evidence. This is reversible error.

One of the most important duties of an ALJ is to assess the claimant's RFC if the sequential evaluation reaches steps four and five. Under the Social Security regulations, RFC is defined as the most an individual still do after considering the effects of the physical and/or mental limitations that affect the ability to perform work-related tasks. 20 CFR § 416.945. "In fact, the RFC determination forms the crux of most of the ALJ's decisions regarding a claimant's ability to perform past relevant work." Prince v. Sullivan, 933 F.2d 598, (7th Cir. 1991). Social Security Ruling, SSR 82-62, requires that the ALJ make specific findings regarding a claimant's capacity to do past relevant work, including a finding about the claimant's RFC. SSR 82-62 "A Disability Claimant's Capacity to do past Relevant Work, in General" (on the web at www.ssa.gov/OPHome/ rulings). According to a Social Security Administration internal rule listed in the Program Operations Manual, the ALJ is required to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe" when making the RFC determination. POMS DI 24515.061C (on the web at http://policy.ssa.gov/poms.nsf/lnx/0424515062!opendocument). The same internal rule states that the ALJ is required to consider the Mental Residual Functional Capacity Assessment form. POMS DI 24510.001 (on the web at http://policy.ssa.gov/poms.nsf/lnx/0424510001! opendocument). As with all ALJ factual findings, the ALJ's RFC assessment must be supported by substantial evidence. Prince, 933 F.2d at 598.

Regarding mental limitations to be used in an RFC assessment, the Social Security Administration has developed a form called the "Mental Residual Functional Capacity Assessment" ("mental RFC form"). This form is filled out by evaluators who are generally medical professionals employed by a state agency called Disability Determination Services ("DDS") in Utah. The evaluators indicate the claimant's level of functioning in twenty work related categories. For each category, the evaluator rates the claimant's functioning in the category as not significantly limited, moderately limited, markedly limited, no evidence of limitation in this category, or not ratable on available evidence. Medical and vocational experts that testify in Social Security hearings are very familiar with this form. Medical experts will routinely testify or indicate limitations in the format set forth in the form. Vocational experts become astute at applying the limitations provided to them in the same format as that used in the form.

In calculating Ms. Martinez's RFC, the ALJ must take into consideration the Mental Residual Functional Capacity Assessment form, which found Ms. Martinez moderately limited in eight out of twenty areas. (Tr. 537-8). The ALJ should also consider the effects of the five moderate impairments listed in the NAL Capacity Assessment. During the testimony of the VE, the VE stated that the moderate limitations may reduce the occupational base ten or fifteen percent. (Tr. 85). The attorney representing Ms. Martinez defined moderate as a person being off-task during the work day 25 percent of the time. (Tr. 89). An exact definition of moderate is important because the ALJ eliminated all job possibilities when a person is off task 25 percent of the time. (Tr. 87). Ms. Martinez's attorney, the VE, and the ALJ had a lengthy discussion

regarding the definition of moderate and at one point the attorney asked for a specific definition of moderate. (Tr. 85-9). However, the ALJ never provided a definition of moderate. Without a definition of moderate, it is impossible to determine to what degree eight moderate impairments will affect Ms. Martinez's workday.

On remand, the ALJ shall adopt an RFC, and present a hypothetical to a vocational expert, that properly defines the term "moderate" in the context of the limitations indicated in the two forms discussed above.

### III. CONCLUSION

Based upon the above analysis, IT IS HEREBY ORDERED that pursuant to sentence four of 42 USC § 405(g) the Commissioner's decision denying Ms. Martinez's application for Supplemental Security Income is REVERSED and REMANDED for further administrative proceedings. IT IS FURTHER ORDERED that judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the United States Supreme Court's decision in Shalala v. Schaefer, 509 US 292, 296-302 (1993).

DATED this 19th day of November, 2007.

Judge Dale A. Kimball
United States District Court